UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ACOSTA, CARLOS AMAYA, JR., RUBEN J. AMAYA, OSCAR R. BARRIOS, JASON BURNETT; JAVIER DE LA TORRE, ISMAEL MARTINEZ; ALONSO MIRAMONTES; DAMIEN J. MIRAMONTES and JUAN MONTUFAR, on behalf of themselves and other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>TEXWOOD INDUSTRIES, L.P., TEXWOOD INDUSTRIES, INC.; MASCO CORPORATION; QUALITY CABINETS, INC.; QUALITY CABINETS; QUALITY CABINETS-SOUTHERN CALIFORNIA; QUALITY CABINETS-NORTHERN CALIFORNIA,<br><br>    Defendants. | Case No. CV 07-03237 DDP (PLAx)<br><br>**ORDER GRANTING PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>[Motion filed on March 30, 2009] |

This matter comes before the Court on Plaintiffs' Motion for an Order granting Preliminary Approval of Class Action Settlement. After reviewing the materials submitted by the parties and considering the arguments therein, the Court grants the motion.

**I.  BACKGROUND**

   A.  Procedural History

On February 20, 2007, Plaintiffs Mario Acosta, Carlos Amaya, Jr., Ruben J. Amaya, Oscar R. Barrios, Jason Burnett, Javier De La Torre, Ismael Martinez, Alonso Miramontes, Damien J. Miramontes, and Juan Montufar ("Plaintiffs" or "Class Representatives") filed this action on behalf of themselves and all others similarly situated in Los Angeles Superior Court, case number BC366574. Defendants removed the case to this Court pursuant to the Class Action Fairness Act. (FAC ¶ 1; see 28 U.S.C. §§ 1332(d), 1453, 1711-15.) Defendants filed an Answer denying all liability or wrongdoing of any kind associated with the claims alleged in the initial Complaint. (Mot. 1:24-25.)

On November 13, 2008, Plaintiffs filed their First Amended Complaint ("FAC"). Plaintiffs were employed by Defendants Texwood Industries, L.P.[1] ("Defendants") as service specialists and/or cabinet installers. (FAC ¶ 2.) In the FAC, Plaintiffs alleged a class action for unpaid overtime, failure to provide meal periods and rest periods, failure to indemnify employees, and penalties for violations of the California Labor Code.[2] (FAC passim; Mot. 1:14-

---

[1] The Defendants listed in the FAC are: Texwood Industries, L.P., Texwood Industries, Inc., Masco Corp., Quality Cabinets, Inc., Quality Cabinets, Quality Cabinets-Southern California, and Quality Cabinets-Northern California. Subsequently, the parties stipulated for the dismissal with prejudice of Masco Corp. from the lawsuit. (Mot. 1:19-23.) Excluding Masco. Corp., the Court notes that Texwood Industries, L.P. was erroneously sued as the remaining defendants listed in the FAC, and they will be collectively referred to as "Defendants." (Settlement Agreement 3:7-11.)

[2] Specifically, the ten causes of action were as follows: (1) Failure to pay overtime in violation of the Industrial Welfare Commission Order 4-2001, 8 CCR 11040, California Labor Code §§ 1194
(continued...)

2

19.) The FAC also included a cause of action for recovery under California's Private Attorneys General Act, California Labor Code sections 2699 et seq. (FAC 24:19-26:8; Mot. 1:21-23; Moss Decl. ¶ 2.)

Since the commencement of the lawsuit, the parties have extensively exchanged information and documents regarding the claims. (Mot. 2:1-13; Moss Decl. ¶ 4.) Furthermore, the parties participated in a mediation of the lawsuit that resulted in the present Stipulation of Class Action Settlement ("Settlement Agreement") before this Court.

B. The Settlement Agreement

Having reached a Settlement Agreement, the parties now move for the Court's approval. The Settlement Agreement provides for a "Settlement Class" consisting of "[a]ll individuals who performed work as installers of cabinets or cabinet service technician work

---

[2](...continued)
and 510;
(2) Failure to authorize and permit rest periods in violation of the Industrial Welfare Commission Order 4-2001, 8 CCR 11040, and California Labor Code § 226.7;
(3) Failure to provide meal periods in violation of the Industrial Welfare Commission Order 4-2001, 8 CCR 11040, and California Labor Code §§ 226.7 and 512;
(4) Violation of Labor Code § 2802 for failure to indemnify employees for the losses incurred while performing their job duties;
(5) Violation of the Industrial Welfare Commission Order 4-2001, resulting in Labor Code § 558 penalties;
(6) Violation of California Labor Code § 226(a) resulting in Labor Code § 226(e) penalties;
(7) Violation of California Labor Code § 226(a) resulting in Labor Code § 226.3 penalties;
(8) Violation of Labor Code §§ 201 and/or 202 resulting in § 203 penalties for failure to pay wages due former employees;
(9) Violation of California Business & Profession Code § 17200, et seq.;
(10) Civil penalties for violations of Labor Code.
(Compl. 1-2.)

in California, whether classified as employees or independent contractors of DEFENDANTS at any time between February 20, 2003 and the preliminary approval of this Settlement." (Settlement Agreement ¶ 6.) The number of Settlement Class Members is estimated to be over three hundred. (Mot. 5:1-2.) The Settlement Agreement designates the ten Plaintiffs as the Class Representatives. (See Settlement Agreement ¶ 22(c).) Dennis F. Moss of the law office of Spiro Moss LLP and Nick Ebrahimian of the law office of Lavi & Ebrahimian LLP are designated as class counsel ("Class Counsel"). (Settlement Agreement ¶ 9.)

The Settlement Agreement provides for Defendants to pay up to, but not more than, $1,053,600.00 to create a Gross Settlement Fund ("GSF") to settle the claims and any derivative claims asserted in the FAC. (Id. ¶ 22.) The GSF will be used to pay for Class Counsel fees and costs, claims administrator costs, and enhancements to Class Representatives. (Id.) The balance of the GSF minus those costs and enhancements is the Net Settlement Fund ("NSF"). Defendants will pay $5,000.00 from the NSF to the California Labor and Workforce Development Agency for penalties under the Private Attorneys General Act ("PAGA"). (Id. ¶ 22(a).) The NSF minus the PAGA payment ("NSFLP") will be the amount that will be available to Qualified Claimants of the Settlement Class ("Settlement Class Members") who return the completed claim form in a timely manner to the Claims Administrator. (Id. ¶ 22(a)(ii).) The NSFLP will be distributed to the Settlement Class Members based on multiplying a claims rate based on the Settlement Class Member's job category by the total number of weeks worked by the Settlement Class Member from February 20, 2003 through the date of the

4

preliminary approval of the Settlement Agreement. (See id. ¶ 22(a)(ii)(1).) In exchange for these individual benefits, Settlement Class Members will release and forever discharge any and all claims related to those in connection with the lawsuit and the Settlement, including any rights under California Civil Code section 1542.[3] (Id. ¶¶ 25-28.) Furthermore, Class Representatives agree that they will not seek employment with Defendants or Defendants' affiliates in the future, and Defendants accordingly have the right to reject employment applications from Class Representatives with or without cause. (Id. ¶ 27.)

The parties move for an order granting: (1) certification of the Settlement Class; (2) appointment of Class Representatives and Class Counsel; (3) preliminary approval of Class Action Settlement; (4) approval of the Notice of Settlement, hearing on final approval of settlement, and claim form; (5) appointment of a Claims Administrator; and (6) a hearing date for final approval.

## II. CLASS CERTIFICATION

Where a proposed class settlement also requires the certification of class claims, a court considers the question of certification first. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). When a court is certifying a class for the sole purpose of settlement, a court "must pay 'undiluted, even heightened, attention' to class certification requirement." Id.

---

[3] California Civil Code section 1542 states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Cal. Civ. Code § 1542. The Settlement Agreement proposes that Settlement Class Members waive their section 1542 rights. (Settlement Agreement ¶ 26.)

5

(quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997)).

For certification of a class to be appropriate, the class must satisfy the requirement of Federal Rule of Civil Procedure 23. First, the class must meet the prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Assuming the requirements of Rule 23(a) are satisfied, the party seeking class certification must also demonstrate that the action falls within one of the three kinds of actions permitted under Rule 23(b).

A. Rule 23(a)

1. Numerosity

A class satisfies the numerosity requirement if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean impossible, but rather refers to the difficulty or inconvenience of joining all the members of the class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). There is no numerical cut-off to determine whether this numerosity requirement is met. Rather, the numerosity requirement "requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980). However, generally, "where a class is large in numbers, joinder will usually be impracticable." Jordan v. Los Angeles County, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982).

Here, the parties estimate that there will be over three hundred Settlement Class Members. (Mot. 5:1-2.) Therefore,

joinder of such a large number of individuals would be impracticable.

### 2. Commonality

To satisfy commonality, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule." Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003) (quoting Hanlon, 150 F.3d at 1019). To meet this requirement, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is the common core of salient facts coupled with disparate legal remedies within the class." Id.

Here, there are common questions including whether Defendants gave the field cabinet installers and/or service technicians overtime pay, meal and rest periods, pay for losses incurred while performing job duties, accurate wage statements, and timely paychecks; whether Defendants engaged in unfair business practices; and whether Defendants' conduct violated California law. (See FAC passim; Mot. 5:7-9; Settlement Agreement ¶ 11.) Consequently, the Court finds that this requirement is satisfied because there remains common factual and legal regarding whether Defendants violated relevant California wage and hour laws.

### 3. Typicality

Typicality is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The rule does not require that class member claims be identical or substantially identical to those of absent class members. Staton, 327 F.3d at 957. "[R]epresentative claims are 'typical' if they are reasonably co-

extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Class representatives meet the typicality requirement "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) (citing Marisol v. Giuliani, 126 F.3d 372, 376 (2nd Cir. 1997)).

Here, Class Representatives' claims appear to be reasonably coextensive with those of the absent class members. All Class Representatives were employed by Defendants as service specialists and/or cabinet installers during some time between February 20, 2003 and the present. (See FAC ¶ 2.) Class Representatives alleged Defendants violated California wage and hour laws including failure to pay overtime, provide meal and rest periods, and reimburse expenses. (Settlement Agreement 5:18:21.) Although differences might exist from individual to individual, the members of the class were likely affected by Defendants' conduct in similar ways, and we find that the typicality requirement has been met.

### 4. Adequacy of Representation

The final prerequisite of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Absent class members must be afforded adequate representation before they are bound to the court's judgment, and Rule 23(a)(4) addresses this constitutional due process concern. See Hansberry v. Lee, 311 U.S. 32, 42-43 (1940); see also Hanlon, 150 F.3d at 1020. Under this prong, two questions must be addressed: (1) whether the named plaintiffs and their counsel have any conflicts of interests with

other class members and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. Staton, 327 F.3d at 957; In re Mego Fin. Corp. Secs. Litig., 213 F.3d 454, 462 (9th Cir. 2000). This factor requires that class members are represented by qualified and competent counsel. See Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1185 (9th Cir. 2007). The Ninth Circuit has emphasized the importance of the court's examination of potential conflicts of interest; the inquiry is "especially critical when a class settlement is tendered along with a motion for class certification. Amchem instructs us to give heightened scrutiny to cases in which class members may have claims of different strength." Hanlon, 150 F.3d at 1020 (discussing Amchem, 521 U.S. at 620).

The Court cannot identify a conflict of interest that would defeat certification on this basis. The Settlement distributes funds to persons who worked during the settlement period based on job category and weeks worked in that position with Defendants. (See Settlement Agreement ¶ 22(a)(ii)(1).) This allocation gives Settlement Class Members who submit claim forms the opportunity to recover for Defendants' alleged wage and hour violations in a fashion that correlates with each member's position pay rate and the length of each member's exposure to Defendants' practices. (See Mot. 5:25-6:2.) Furthermore, Settlement Class Members are also given the option to "opt out" of the settlement. (Id. 6:2-4; Settlement Agreement ¶ 39.)

Additionally, the Court finds the adequacy of representation requirements are met here. "In assessing the vigor with which the Class Counsel prosecuted the action in the context of a settlement

only class we must assess the rationale for not pursuing further litigation." In re Mego, 213 F.3d at 463. Here, Plaintiffs' attorneys, Dennis F. Moss of Spiro Moss LLP and Nick Ebrahimian of Lavi & Ebrahimian LLP, engaged in potential exposure calculations and assessed the likelihood of success on the merits. (Mot. 3:21-22; Moss Decl. ¶ 8.) They took into account the risks related to liability, including the risks posed by the "willfulness" requirements in California Labor Code section 203. (Moss Decl. ¶ 12.) The parties exchanged information and documents and, using that information, Plaintiffs' Counsel analyzed the law and potential damages. (See Mot. 2:1-3:4; Moss Decl. ¶¶ 4, 6.) Moreover, the parties met with an experienced wage and hour class action mediator and engaged in settlement negotiations during a day-long mediation. (Mot. 3:18-21; see Moss Decl. ¶ 4.) Plaintiffs' attorneys appear to be experienced in class action litigation and appears to have vigorously pursued this matter. (See Moss Decl. ¶¶ 5, 9.) Therefore, the Court finds that this requirement is met.

B.  Rule 23(b)(3)

In addition to meeting the threshold requirements imposed by Rule 23(a), a class must be of a type recognized in Rule 23(b). Here, the parties seek certification based on Rule 23(b)(3).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ.

P. 23(b)(3). Matters pertinent to a finding of predominance and superiority include:

> (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(a)-(d). The latter factor is of less importance when a court is certifying only for the purpose of settlement. See Amchem, 521 U.S. at 620.

The Court finds that the predominance and superiority requirements are met here. Although there may be variations regarding how much each Settlement Class Member may recover, common issues predominate as to whether Defendants violated California wage and hour laws and as to whether cabinet installers and service technicians were harmed by Defendants' actions. Settlement Class Members all contend that their injuries stem from Defendants' business practices. Class action here is the superior method of resolution since there are likely over three hundred Settlement Class Members, and such a large number of individual claims for relatively small amounts of damages would not be efficient or preferred. See Hanlon, 150 F.3d at 1023; Mot. 7:18-18:1.

**III. REVIEW OF SPECIFIC PROVISIONS**

Having certified the Settlement Class, the Court must next decide whether the Settlement Agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In a court's review of the settlement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026.

A court considers the following factors when reviewing a proposed class action settlement pursuant to Rule 23(e):

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 575-76 (9th Cir. 2004); Hanlon, 361 F.3d at 1026. Additionally, the court must ensure that the settlement is not "the product of collusion among the negotiating parties." Churchill Village, 361 F.3d at 576. Where settlement approval takes place prior to or concurrently with formal class certification, the court must impose a higher standard of fairness. Hanlon, 150 F.3d at 1026.

A. Settlement Award and Distribution (Rule 23(e)(2))

After review, the Court finds that the factors counsel in favor of settlement in this case. First, although Plaintiffs believe that they could have established the predominance of common issues of fact and law necessary for class certification, Plaintiffs recognize that class certification was not guaranteed. (Moss Decl. ¶ 12; see Mot. 3:17-4:3.) In addition, Defendants allege that Plaintiffs' claims are not suitable for class treatment, except in the context of a negotiated settlement. (Moss Decl. ¶ 3; Mot. ¶ 2.)

Second, Class Counsel acknowledges risks related to liability, risks inherent with trial, and risks posed by the "willfulness" requirements in California Labor Code section 203. (Moss Decl. ¶ 3 12.) Class Counsel acknowledges the risk of significant delay,

12

defenses asserted by Defendants, and various potential appellate issues. (Id. ¶ 8.) They acknowledge that Defendants have denied and continue to deny any liability or wrongdoing of any kind associated with the claims alleged in the FAC. (Id. ¶¶ 3, 7.) Proceeding with further litigation increases the chance that class certification will be denied, which would possibly lead to many individuals hiring their own lawyers to pursue relatively small claims. (Id. ¶ 14.) Furthermore, Defendants are concerned about the additional expense, delay, and inconvenience of litigation. (Mot. 3:6-16.)

Third, the parties have not indicated whether there is a risk that class action status could not be maintained throughout trial. Regardless, Class Counsel has indicated their desire to afford Settlement Class Members present relief without risking denial of class certification or a loss at trial. (Moss Decl. ¶¶ 12, 14.)

Fourth, the $1,053,600.00 amount offered by Defendants appears reasonable. Class Counsel had access to time records, records evidencing compensation, work logs, invoices, and information regarding policies and practices of Defendants. (Id. ¶ 4.) This information was used to analyze potential damages and calculate potential exposure. (Id. ¶¶ 6, 8.) Also, the settlement amount was the product of an all-day mediation with the parties and an experienced wage and hour mediator. (See Mot. 3:18-21; Settlement Agreement ¶ 3; Moss Decl. ¶ 4.) Overall, the settlement amount offered seems reasonable.

Fifth, as stated earlier, the parties conducted an extensive exchange of information. (Mot. 2:1-13; Moss Decl. ¶ 4.) Therefore, the parties were likely informed of all the relevant

13

facts necessary to evaluate the case for settlement. (See Moss Decl. ¶ 8.)

Sixth, Class Counsel appears to be experienced in class action litigation. (See Moss Decl. ¶¶ 5, 9.) Moreover, Class Counsel has indicated that despite their belief that the claims have merit, they have concluded that it is within the best interest of the class members to settle. (See Moss Decl. ¶¶ 11, 12, 15.)

Lastly, there is no evidence that the Settlement Agreement was the product of collusion or fraud among the parties. Before the present Settlement Agreement, both parties vigorously litigated the issue of class certification. (See Moss Decl. ¶ 5.) Furthermore, both parties conducted extensive discovery, and the Settlement Agreement is a result of the mediation between the parties. (See Mot. 2:1-13, 3:18-21; Settlement Agreement ¶ 3; Moss Decl. ¶ 4.)[4]

B.  Attorneys' Fees

"[D]istrict court[s] must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." Staton, 327 F.3d at 963. "The district court has discretion to use the lodestar method or the percentage of the fund method in common fund cases." Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000) (citing In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997)). Although the court has discretion, the percentage method seems to be dominant in common fund cases. See, e.g., Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002); Six Mexican

---

[4] The last two Churchill Village factors are not discussed here. The presence of a governmental participant is irrelevant to this case. Similarly, the reaction of the class does not apply at this stage.

14

Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990); Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir. 1989). Under the percentage of the fund method, the Ninth Circuit has "established a 25 percent 'benchmark'. . . that can be adjusted upward or downward to account for any unusual circumstances involved in [the] case." Fischel v. Equitable Life Assurance Soc'y of the U.S., 307 F.3d 997, 1006 (9th Cir. 2002) (citation omitted); see also Staton, 327 F.3d at 968.

Here, Class Counsel is asking the Court for an award of fees of 33 percent of the settlement amount or, in other words, $350,848.80.[5] (Moss Decl., Ex. 1, ¶ 13; Mot. 11:7-11.) This amount is greater than the general Ninth Circuit benchmark. Class Counsel points to the "relatively small fund" and therefore suggests that "it is not unreasonable to ask for more than 25 [percent]." (Mot. 11:14-15.) The parties, however, do not present "unusual circumstances" involved in the case that would require upward or downward adjustment from the benchmark. See Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).

The Court finds it appropriate to give notice to the Settlement Class of this fee request. However, the Court is not convinced that the full $350,848.80 is warranted. Accordingly, the Court requests that Class Counsel address attorneys' fees in more detail when moving for final settlement approval, including

---

[5] The parties note that the award for Class Counsel fees, litigation expenses, and Class Representative enhancements will come from the GSF. (Moss Decl., Ex. 1, ¶ 13.) The Ninth Circuit has approved of using either the gross or the net settlement fund amount in calculating attorney's fees, so long as the amount is reasonable. Powers, 229 F.3d at 1258.

15

providing Class Counsel's hours worked on the case and current hourly pay rate, to conduct a lodestar cross check. (See Mot. 11 n.4; Vizcaino, 290 F.3d at 1050-51.)

    C.    Enhancement for Class Representatives

The district court must evaluate the reasonableness of incentive payments, using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing litigation . . . and reasonable fears of workplace retaliation." Staton, 327 F.3d at 977 (citing Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (internal alterations omitted)).

As part of the Settlement Agreement, the parties ask the Court to approve an enhancement award of $5,000.00 for each of the ten Class Representatives.[6] (Settlement Agreement ¶ 22(c).) The parties note that Class Representatives undertook the risk and burden of litigation, met with counsel on numerous occasions and assisted with investigations, and participated in an all-day mediation. (Moss Decl. ¶ 20.)

We look to some cases to gauge whether the enhancement amount is fair, reasonable, and adequate. In the case of In re Mego Financial Corp. Securities Litigation, the Ninth Circuit awarded incentive awards of $5,000.00 each to two class representatives among 5,400 potential class members in a settlement of $1.725 million. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th

---

[6] Mario Acosta, Carlos Amaya, Jr., Ruben J. Amaya, Oscar R. Barrios, Jason Burnett, Javier De La Torre, Ismael Martinez, Alonso Miramontes, Damien J. Miramontes, and Juan Montufar. (Settlement Agreement ¶ 22(c).)

16

Cir. 2000). Courts have also approved $2,000 incentive awards to each of five named plaintiffs out of a class of potentially four million individuals in a settlement of $3 million. Staton, 327 F.3d at 976 (citing In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002)).

In addition to the efforts of the class representatives, courts may consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." See id. at 977. Here, we are considering allocating $5,000.00 each to ten Class Representatives out of a potential class of over three hundred individuals in a settlement of $1,053,600.00. In light of the examples above, the Court finds that preliminary approval is warranted considering the time and effort expended to pursue the present claims on behalf of the Settlement Class.[7] The Court will further review whether this award is fair, reasonable, and adequate at the final approval hearing.

D. Notice to the Class

The notice requirements under Rule 23(e) require that "the class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice [and] the notice must indicate that a dissident can object to the settlement and to the definition of the class." Officers for Justice v. Civil

---

[7] Although the proportion of the total enhancement awards to the settlement amount is greater in the present case than in the examples listed above, the number of potential Settlement Class Members here, approximately three hundred, is considerably less than the number of class members in the examples. Therefore, it is likely that a fair amount of the settlement award will still be available to the remaining class members.

17

Serv. Comm'n of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (internal citations omitted); see also Hanlon, 150 F.3d at 1025-26 (notice was adequate when notice provided each member the opportunity to opt-out and individually pursue other remedies and when notice clearly stated that it would release defendants from all claims arising from the same situation).

Here, the Settlement Class Members Notice of the Class Action Settlement ("Notice")[8] identifies the class period; the $1,053,600.00 settlement amount; and the amount requested by Class Counsel for attorney's fees, costs, and Class Representative enhancements. (Moss Decl., Ex. 1, ¶ 13.) Also, the notice explains the calculations used to determine how the NSFLP net settlement fund will be distributed, and it provides an estimated amount that each Settlement Class Member will receive if the claim is filed in a timely manner. (Id. ¶ 5.)

The Settlement Agreement proposes to give Settlement Class Members Notice and the Settlement Claim Form ("Claim Form") via first-class mail. (Settlement Agreement ¶ 29.) Defendants will provide the Claims Administrator with information including the names, last known address, social security number, and dates of employment of the Settlement Class Members. (Id.) The Claims Administrator will run the addresses through a National Change of Address database before mailing the Notice and Claim Form. (Id.) The Claims Administrator will conduct address searches to find

---

[8] The Court notes that the page numbers of the Notice need to be adjusted to correspond with the appropriate question numbers. Also, the footer needs to be changed to reflect the present case.

18

updated information for Notices or Claim Forms returned as undeliverable. (Id. ¶ 32.)

The Notice specifically states that persons may mail a letter to the Court if they object to the Settlement or if they do not like any part of the Settlement. (Moss Decl., Ex. 1, ¶ 14.) The Notice informs Settlement Class Members that by remaining in the Class, they agree to release all claims against Defendants in connection with the legal issues in this case and that they will be legally bound to the Court's orders. (Id. ¶ 8.) The Notice also gives instructions on how to opt-out of the Settlement for those who do not want payment or for those who choose to keep the individual right to sue for legal issues raised in this case. (Id. ¶¶ 8-9.) The Settlement Agreement gives Settlement Class Members ninety days from the date of Notice mailing to complete the Claim Form and return it via mail or facsimile. (Settlement Agreement ¶ 38.) Also, the Settlement Agreement gives Settlement Class Members forty-five days from the date of Notice mailing to request exclusion from/opt-out of the class. (Id. ¶ 39.) The Court finds that this is ample time for Settlement Class Members to respond. The parties agree that if thirty-five or more Settlement Class Members opt-out, Defendants have the option to cancel the Settlement. (Moss Decl., Ex. 1,0 ¶ 9.)

Furthermore, there is a toll-free number that Settlement Class Members may call to ask questions. (Settlement Agreement ¶ 19; Moss Decl., Ex. 1, ¶ 20.) Also, Class Counsel insisted that their names and contact information be provided in the Notice so that they could also field questions by Settlement Class Members. (Moss Decl. ¶ 18; Ex. 1, ¶ 12.)

Therefore, the Court finds that the Notice to the Class in the manner provided in the Settlement Agreement is well-calculated to reach the Class Members and to give them pertinent details of the settlement.

**IV.   CONCLUSION**

     For the foregoing reasons, the Court is inclined to (1) grant the Motion for Class Certification for the purposes of settlement; (2) appoint Mario Acosta, Carlos Amaya, Jr., Ruben J. Amaya, Oscar R. Barrios, Jason Burnett, Javier De La Torre, Ismael Martinez, Alonso Miramontes, Damien J. Miramontes, and Juan Montufar as Class Representatives, and appoint Dennis F. Moss of Spiro Moss LLP and Nick Ebrahimian of Lavi & Ebrahimian LLP as Class Counsel; (3) preliminarily approve the Settlement Agreement; (4) approve the Notice and Claim Form; (5) approve the appointment of Simpluris, Inc. as the Claims Administrator; and (6) set the hearing date for final approval approximately 150 days following this preliminary approval.

IT IS SO ORDERED.

Dated: May 18, 2009

DEAN D. PREGERSON
United States District Judge